Magistrate Judge Mary Alice Theiler

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

JIOVANNI ALEJANDRO NUNEZ,

Defendant.

NO. MJ19-580

COMPLAINT FOR VIOLATION

21 U.S.C. § 841(a) and 841(b)(1)(c)

BEFORE the Honorable Mary Alice Theiler, United States Magistrate Judge,
U. S. Courthouse, Seattle, Washington.

**COUNT 1**
**(Possession of Controlled Substance with Intent to Distribute)**

On or about November 27, 2019, in Mount Vernon, within the Western District of
Washington, and elsewhere, the defendant, JIOVANNI ALEJANDRO NUNEZ did
knowingly and intentionally possess, with intent to distribute, N-phenyl-N-[1-(2
phenylethyl)-4-piperidinyl] propanamide, also known as fentanyl, a Schedule II
controlled substance under Title 21, United States Code, Section 812.

All in violation of Title 21, United States Code, Sections 841(a)(1) and
841(b)(1)(C).

COMPLAINT/LOPEZ-RODRIGUEZ - 1

This Complaint is based upon the following information:

I, Christopher VandenBos, a Task Force Officer (TFO) with the Drug Enforcement Agency (DEA), having been duly sworn on oath, depose and say:

## INTRODUCTION AND AGENT BACKGROUND

1.     I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7).  Specifically, I am a Task Force Officer with the Drug Enforcement Administration ("DEA"), assigned to the Bellingham, Washington Resident Office.  In that capacity, I investigate violations of the Controlled Substances Act (Title 21, United States Code, Section 801, *et seq.*).  I have been assigned as a Task Force Officer with the DEA since January 2019.  Prior to becoming a Task Force Officer, I was a Deputy with the Whatcom County Sheriff's Office in Washington. I received my Washington State law enforcement commission in 2015. In my experience as a law enforcement officer, I have participated in numerous narcotics investigations, during the course of which I have participated in physical surveillance, interviews, and executions of state and federal search warrants. As a law enforcement officer, I have participated in both death and homicide investigations.

2.     I have completed the Undercover Techniques and Survival for Narcotics Officers School hosted by the Western Regional Counterdrug Training Center, as well as other training courses related to gangs and narcotics trafficking.  I have participated in narcotics investigations at both the local and federal level, and I have participated in the execution of federal search warrants.  As a result, I have become familiar with methods of operation of drug traffickers and organizations.  As a Task Force Officer with the DEA, I have the responsibility of working with other federal and state law enforcement officers in investigations of violations of federal and state controlled substance laws, including the investigation of cocaine, methamphetamine, heroin, fentanyl, marijuana and other dangerous drug organizations.

3.     I have participated in the debriefing of defendants, witnesses, and informants, during which time I have discussed with them their methods of drug

COMPLAINT/LOPEZ-RODRIGUEZ - 2

1  smuggling, distribution, packaging, trafficking, avoiding law enforcement, and
2  laundering proceeds, among other concerns related to drug trafficking. I have discussed
3  and learned from other law enforcement investigators in regards to these matters as well.

4      4.      Based on my training, experience, and conversations with other
5  experienced narcotics investigators, I have gained experience in the techniques and
6  methods used by drug traffickers to distribute controlled substances, their use of cellular
7  phones and other electronic communication devices to facilitate their trafficking activity,
8  and the methods used to conceal and launder the proceeds of said activity.

9                          **SOURCES OF INFORMATION**

10     5.      I make this Affidavit based upon personal knowledge derived from my
11  participation in this investigation and upon information I believe to be reliable from
12  various sources, including:

13         a.      My training and experience investigating drug trafficking and related
14  criminal activity, as described above;

15         b.      Oral and written reports and documents about this and other
16  investigations that I have obtained from agents of the DEA and the Whatcom County
17  Sheriff's Office (WCSO), and other federal, state and local law enforcement agencies;

18         c.      Physical surveillance conducted by the aforementioned agencies,
19  and other law enforcement agencies, that has been reported to me directly or indirectly;

20         d.      Telephone toll records, pen register and trap and trace information,
21  and subscriber information;

22         e.      Washington State Department of Licensing records;

23         f.      Commercial Databases;

24         g.      Public records; and

25         h.      Publicly viewable information on social media websites (*e.g.*,
26  Facebook, Instagram).

27

28

COMPLAINT/LOPEZ-RODRIGUEZ - 3

6.     Since this Affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint, I have not included every fact known to me concerning this investigation. I have set forth only the facts that I believe are essential to establish the necessary foundation for a fair determination of probable cause to support the Complaint.

7.     In the following paragraphs, I describe communications between various individuals. Except where specifically indicated with quotation marks, the descriptions are summaries of the conversations and are not meant to reflect the specific words or language used.

## SUMMARY

8.     On November 9, 2019, a 17-year-old male was found dead at his home in the Bellingham area. The follow-up investigation determined fentanyl overdose as the likely cause of the death. Based on multiple interviews and review of the victim's phone and other records, DEA investigators identified Rosaliana LOPEZ-RODRIGUEZ as the person who provided the victim with fentanyl. The ensuing surveillance and undercover operations further identified Giovanni Alejandro NUNEZ as the potential source of supply for LOPEZ-RODRIGUEZ. On November 27, 2018, DEA investigators arrested LOPEZ-RODRIGUEZ and searched NUNEZ's residence. LOPEZ-RODRIGUEZ admitted dealing counterfeit oxycodone pills laced with fentanyl and identified NUNEZ as her source. In a safe found in NUNEZ's bed room, DEA investigators found hundreds of counterfeit oxycodone pills, likely containing fentanyl.

## STATEMENT OF PROBABLE CAUSE

**A.     November 9, 2019 Death Investigation by Whatcom County Sheriff's Office**

9.     On November 9, 2019, L.B. called 911 and reported that her 17-year-old brother was unresponsive inside his home in Bellingham, Washington. Emergency Medical Services (EMS) and deputies from the Whatcom County Sheriff's Office (WCSO) were dispatched to that address. Upon arrival, EMS located the unresponsive

COMPLAINT/LOPEZ-RODRIGUEZ - 4

1   male and began lifesaving efforts. However, the efforts were unsuccessful and the 17-
2   year-old male (hereinafter the "Victim") was pronounced dead.

3         10.     Investigators from the WCSO processed the scene. They found a piece of
4   tin foil with burnt residue—common drug paraphernalia—in the Victim's pants pocket.
5   Investigators also found a full pill and a partial pill on the nightstand of the Victim's
6   bedroom. The pills were round, light blue in color, and stamped with the letter "M"
7   within a box on one side, and with the number "30" on the other side.

8         11.     I know, based on my training and experience, that these "M 30" pills found
9   in the Victim's bedroom are consistent in appearance with counterfeit pills that are
10  designed to look like 30mg Oxycodone HCl pills manufactured by Mallinckrodt but
11  actually contain fentanyl and/or fentanyl analogues and have been located throughout
12  Whatcom and Skagit County in recent months.

13        12.     The partial pill found in the Victim's bedroom appeared broken. I know,
14  based on my training and experience, that counterfeit pills are often less durable than
15  pharmaceutical-grade pills manufactured in legitimate laboratories. I also know, based on
16  my training and experience, that drug users often break these counterfeit pills containing
17  fentanyl and/or fentanyl analogues for personal consumption due to their inconsistent and
18  often highly potent dosage so as not to overdose.

19        13.     The "M 30" pills recovered from the Victim's bedroom were later field-
20  tested by the Whatcom County Fire Department using a HazMatID Elite FT-IR Scanner,
21  a portable chemical detector manufactured by a US-based company called Smiths
22  Detection. The scan result indicated the presence of fentanyl, veleryfentanyl (a fentanyl
23  analogue), hydroxythiofentanyl (another fentanyl analogue), and mannitol, which is
24  commonly used as a cutting agent for drugs.

25
26
27
28

COMPLAINT/LOPEZ-RODRIGUEZ - 5

14.     Investigators also obtained Victim's cellphone from L.B., the Victim's sister.[1] The investigators subsequently confirmed with the Victim's family members that the phone had been used by the Victim and the number assigned to the phone was 360-927-7952. A search of a law enforcement database revealed that 360-927-7952 was serviced by AT&T. Information subsequently obtained from AT&T for 360-927-7952 showed that the listed subscriber was L.B.—the Victim's sister—at the same address in Bellingham, Washington. L.B. confirmed that while she was listed as the subscriber, she did this for the Victim, who was a minor, and that it was indeed the Victim who used the cellphone.

15.     While investigators were still processing the scene, the Victim's brother, R.B., arrived. WCSO detective Bogle then conducted a consensual recorded interview with R.B. R.B. told Detective Bogle the following:

a.     R.B. communicated with the Victim through Snapchat. R.B. asked L.B. to check on the Victim when he saw the Victim was not active on Snapchat.

b.     The day before Victim's death, the Victim told R.B. that he was involved in the sale and distribution of "Perc 30s," a common street term for 30mg opioid pills such as Oxycodone or Percocet. The Victim also told R.B. that he was purchasing "M 30" pills from a Hispanic woman in the Mount Vernon, Washington area for $14.00 a pill. The Victim told R.B. that the pills then could be re-sold in the Bellingham area for $50.00 a pill.

c.     The Victim acknowledged to R.B. that the pills were likely "dirty." Based on my training and experience, a "dirty" pill refers to a counterfeit pill containing fentanyl or fentanyl analogues.

---

[1] In the previous affidavit for a search warrant in this case, it was stated that the Victim's phone was found on the Victim's bed. This was based on evidence photos reviewed by undersigned affiant. Upon further review of case reports that were not completed at the time of the drafting of said affidavit, I discovered that the Victim's phone was given to investigators by the Victim's sister and placed on the Victim's bed prior to the taking of the evidence photos.

COMPLAINT/LOPEZ-RODRIGUEZ - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1        d.     The Victim also told R.B. that the Hispanic woman in Mount

2 Vernon had "a thousand" of these "M 30" pills and that the pills were much cheaper than

3 the street values for comparable pharmaceutical-grade pills. The Victim told R.B. that he

4 would only ingest "a quarter" of the "dirty" M 30 pill at a time to avoid overdosing.

5       16.    R.B. told Detective Bogle that the Victim had been selling "Perc 30's" with

6 a teenage male friend whom R.B. only knew as "Big D."

7       17.    R.B. told Detective Bogle that another male friend of the Victim, whom he

8 identified as 18-year-old male, S.K., had recently overdosed on the same or similar

9 suspected counterfeit "M 30" pills in the Bellingham, Washington area.  R.B. believed

10 that S.K. survived the overdose incident.

11 **B.**    **911 Call from R.B. on November 10, 2019**

12       18.    On November 10, 2019, the Whatcom County 911 Call Center received a

13 911 call from R.B. The phone call was recorded and later reviewed by investigators. In

14 the call, R.B. asked to speak to a WCSO investigator, saying that he had located "the

15 drug dealer's" information. R.B. also said that he had made an arrangement to meet the

16 "drug dealer" in Mount Vernon.

17       19.    WCSO detective Bogle then contacted R.B. by phone. R.B. told the WCSO

18 detective that a Snapchat account "FLEXDADDY521" had sent R.B. a friend request that

19 day. R.B. recognized the account as the person that had been supplying the Victim with

20 the "M 30" pills.  R.B. then revealed that he had arranged to purchase pills from

21 "FLEXDADDY521" through Snapchat and that he was driving to Mount Vernon,

22 Washington, to meet with "FLEXDADDY521" at 830 North 16th Street, Mount Vernon,

23 Washington. R.B. did not provide a detailed context of how he received a friend request

24 from "FLEXDADDY521" or how he recognized "FLEXDADDY521" as the person who

25 had sold "M 30" pills to the Victim.

26       20.    An internet search showed that 830 North 16th Street is the address for

27 Cornwall Church in Mount Vernon, Washington. Detective Bogle told R.B. not to make

28 contact with the alleged drug dealer. R.B. agreed.

COMPLAINT/LOPEZ-RODRIGUEZ - 7

1   21.   DEA investigators later searched the username "FLEXDADDY521" on

2   Snapchat. The name linked to "FLEXDADDY521" was "r trujillo."

3   **C.   Interview with S.K. on November 13, 2019 at the WCSO**

4   22.   On November 13, 2019, S.K. agreed to meet with WCSO detective Bogle

5   at the Whatcom County Sheriff's Office in Bellingham, Washington. Detective Bogle

6   conducted a consensual recorded interview with S.K. regarding his overdose incident and

7   relationship with the Victim.

8   23.   During the interview, S.K. revealed the following:

9   a.   S.K. and the Victim knew each other and were "using" together.

10   S.K. believed that he and the Victim were using the same "Perc 30s," which S.K.

11   believed caused the Victim's overdose death.

12   b.   S.K. believed that on November 1, 2019, the Victim had procured

13   some "M 30" pills in the evening. That day, the Victim told S.K. that he was going to

14   meet with a Hispanic woman named "Rosie" in the Mount Vernon area. The Victim then

15   left S.K.'s house, was gone for approximately an hour, and then returned with several of

16   the "M 30" pills, some of which he gave to S.K. S.K. took a portion of one of the pills,

17   which resulted in an overdose incident in the early morning of November 2, 2019.

18   c.   Investigators listened to the recorded 911 phone call stemming from

19   S.K.'s overdose incident. A person on the 911 call was heard saying that CPR was being

20   performed to an unresponsive male named "S" which is S.K. first name.

21   d.   The Victim and S.K. had discussed the "M 30" pills and "Rosie."

22   The Victim told S.K. that he was aware that the pills likely contained fentanyl. The

23   Victim further told S.K. that he was purchasing the pills for $14.00 a pill in Mount

24   Vernon, Washington and that "Rosie" had given him money to help with his car,

25   resulting in a debt owed to her.

26   e.   The Victim also told S.K. that he was delivering pills on behalf of

27   "Rosie." S.K. believed, based on his conversations with the Victim, that "Rosie" was

28   involved in pressing "M 30" pills with her uncle in a duplex near a church in Mount

COMPLAINT/LOPEZ-RODRIGUEZ - 8

1   Vernon. The Victim told S.K. that there was a pill press at that duplex, which "Rosie"
2   had disclosed to the Victim after S.K.'s overdose. S.K. believed that the Victim obtained
3   the "M 30" pills at the church parking lot and that a majority of the deliveries occurred in
4   the Mount Vernon, Washington area.

5      f.  Based on his conversations with the Victim, S.K. also believed that
6   "Rosie" was the Victim's only source of supply.

7      g.  S.K. had been upset after another acquaintance, whose identity S.K.
8   declined to disclose, had sent him a screenshot image of a Snapchat post from
9   "FLEXDADDY521." The post read:

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT/LOPEZ-RODRIGUEZ - 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22



23  S.K. provided the investigators with the screenshot image. The image showed that the

24  post was made by "r trujillo" on November 12, 2019. S.K. believed that

25  FLEXDADDY521 belonged to "Rosie," but did not specify the basis for his belief.

26  **D.    Information Regarding Autopsy of the Victim on November 14, 2019**

27      24.    On November 14, 2019, investigators spoke with Whatcom County

28  Medical Examiner Dr. Gary Goldfogel. Dr. Goldfogel said that he had conducted the

COMPLAINT/LOPEZ-RODRIGUEZ - 10

1  autopsy on the Victim, who investigators suspect overdosed on November 9, 2019.  Dr.

2  Goldfogel advised he had conducted two Status DS brand urine tests, one for general

3  narcotics and another for fentanyl. Both returned negative. Dr. Goldfogel stated,

4  however, that this did not rule out a fentanyl-related overdose and that the previous two

5  death cases he had investigated and been confirmed to be fentanyl-related had produced

6  the same initial negative urine test results. Additional toxicology tests are pending with

7  the Washington State Patrol Laboratory.

8  **E.      Identification of "Rosie" as Rosaliana LOPEZ-RODRIGUEZ**

9         25.     In the fall of 2019, independent and separate from the current investigation,

10  a citizen contacted the Sedro Woolley Police with information about an individual named

11  "Rosie" who he/she said was selling "Perc 30s" that were laced with fentanyl. DEA

12  investigators found out about this citizen report when they reached out to local law

13  enforcement agencies in search for information related to "Rosie." Investigators

14  subsequently learned the identity of the citizen informant. According to a law

15  enforcement database, the citizen informant has a gross misdemeanor conviction for a

16  controlled substance violation in the early 2010s and a misdemeanor DUI conviction in

17  2018.

18         26.     The citizen informant provided the following information to the Sedro

19  Woolley Police regarding "Rosie":

20              a.      The citizen informant had purchased pills from "Rosie" and

21  overdosed at least twice after using the pills from "Rosie." The citizen informant was

22  upset that he/she overdosed on the pills provided by "Rosie," which prompted him/her to

23  provide information about "Rosie" to the Sedro Woolley Police.

24              b.      The citizen informant initially provided 360-540-8464 as the phone

25  number for "Rosie" and said that "Rosie" lives on "16th" in Mount Vernon, Washington.

26  The citizen informant later communicated with the Sedro Woolley Police officer and

27  provided 360-982-9395 as the new contact number for "Rosie." According to the citizen

28  informant, "Rosie" had reached out to him/her and provided the new number.

COMPLAINT/LOPEZ-RODRIGUEZ - 11

c.      "Rosie" and her girlfriend "Olivia" obtained pills from Rosie's uncle and that the Rosie's uncle received pills from Mexico. In addition to selling pills, "Rosie" sold cocaine as well.

d.      The citizen informant would usually meet "Rosie" at Rosie's house to buy pills. "Rosie" would come out of the house, walk to the citizen informant's car, and sell pills to the citizen informant while the citizen informant was seated inside the car.

e.      The citizen informant did not know how many pills that "Rosie" was selling but knew that "Rosie" sold the pills unwrapped and always had a bundle of cash. The citizen informant noted that Rosie's girlfriend was aware of her drug dealing but the girlfriend did not sell drugs.

27.      Utilizing the information provided by the citizen informant, the Sedro Woolley PD located the citizen informant's social media accounts. Through the citizen informant's social media accounts, the Sedro Woolley PD potentially identified "Rosie" as Rosaliana LOPEZ-RODRIGUEZ and her likely girlfriend as Olivia Estes-Chavez.

28.      The citizen informant said that he/she had not purchased pills from "Rosie" in several months. However, a review of toll records between the citizen informant's phone number and 360-982-9395—the phone number the citizen informant identified as belonging to "Rosie"—showed that the citizen informant and "Rosie" had contacted each other on approximately 221 separate occasions between October 25, 2019, and November 16, 2019.

**F.      Records Associated with LOPEZ-RODRIGUEZ's phone, 360-982-9395**

29.      On or about November 15, 2019, investigators searched a law enforcement database and found out that 360-982-9395 was being serviced by Sprint. The records obtained from Sprint showed that the listed subscriber for the phone number was "Olivia Chavez" at 522 North 16th Street, Mount Vernon, Washington. Investigators searched for and identified Instagram pages belonging to LOPEZ-RODRIGUEZ and Estes-Chavez and a Facebook page belonging to LOPEZ-RODRIGUEZ based on the fact that the

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  individuals' pictures displayed on those pages matched the Washington driver license

2  photos for LOPEZ-RODRIGUEZ and Estes-Chavez. All pages were open to public for

3  viewing and displayed multiple pictures of LOPEZ-RODRIGUEZ and Estes-Chavez

4  together. LOPEZ-RODRIGUEZ's Facebook page also indicated that she and Estes-

5  Chavez were "in a relationship." It is common for drug traffickers to use another person's

6  name to sign up for a cellphone service in an attempt to conceal their true identity.

7      30.   A review of toll records between October 25, 2019, the activation date for

8  360-982-9395, and November 12, 2019, revealed that the Victim (360-927-7952 ) and

9  360-982-9395 contacted each other on approximately 80 separate occasions. 79 of such

10  contacts were text messages and one such contact was a call from 360-982-9395 to the

11  Victim's phone on or around November 12, 2019, three days after the Victim's death.

12  **G.    Search of the Victim's phone**

13      31.   On November 15, 2019, investigators obtained consent to search the

14  Victim's phone from L.B., the Victim's sister and the listed subscriber for the Victim's

15  phone, and both of the Victim's parents. All three signed written consent to search forms

16  allowing investigators to search the Victim's phone.

17      32.   On November 18, 2019, investigators searched the Victim's phone. During

18  the search of the Victim's phone, investigators found several text messages between the

19  Victim and 360-982-9395.  Investigators also found Snapchat messages between the

20  Victim and "r trujillo".

21      33.   On October 25, 2019, the day 360-982-9395 was activated, 360-982-9395

22  and the Victim exchanged the following text messages:

23          VICTIM:          Yo

24          360-982-9395:    Sup text this number once in awhile if u tryna meet

25          VICTIM:          So jus use this instead of snap?

26          360-982-9395:    Yes but if I don't reply fast enough within 10 mins hit

27                           my snap

28          VICTIM:          Wordd

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

34.     On October 29, 2019, the following text exchange between the Victim and 360-982-9395 took place:

| | | |
|---|---|---|
| VICTIM: | Yo I'm bout to be omw down soon for a 2 piece |
| 360-982-9395: | Ok hnu shen m |
| 360-982-9395: | When your on your way |
| VICTIM: | At the Church |
| 360-982-9395: | Coming |

35.     The following conversation between the Victim and 360-982-9395 took place on October 30 and 31, 2019:

| | |
|---|---|
| VICTIM: | What kinda deal I trynga throw me for 110$ |
| 360-982-9395: | 4 is 115 |
| 360-982-9395: | 6 i got left for you |
| VICTIM: | Ight |
| 360-982-9395: | Lucky i had that left |
| VICTIM: | Fr lol thank u |
| 360-982-9395: | How long till your at the church |
| 360-982-9395: | To see when i can go get more |
| VICTIM: | Idk bout to be passing the casino soon |
| 360-982-9395: | Ok |
| VICTIM: | Passing casino rn |
| 360-982-9395: | So 20 mins |
| VICTIM: | Yea |
| 360-982-9395: | Ok imam send u another address to meet but its near by |
| VICTIM: | Word |
| VICTIM: | Here boss |
| 360-982-9395: | Coming |
| VICTIM: | I'm like parked next to those apartment type things |

COMPLAINT/LOPEZ-RODRIGUEZ - 14

| | VICTIM: | 120 N 17th Street |
|---|---|---|
| | 360-982-9395: | OK |

36.     Then, on November 9, 2019, the day of the Victim's death, the following text exchange occurred between the Victim and 360-982-9395:

| | Victim: | Yo I'm at the corner |
|---|---|---|
| | Victim: | Jus getting 3 |
| | 360-982-9395: | Ok |

37.     The following images are pictures taken from the Victim's Snapchat conversation with "r trujillo":

//

//

//

COMPLAINT/LOPEZ-RODRIGUEZ - 15

Text messages shown in screenshot:

**ME**
Why do u have to wait what's the point I don't understand
They're 150 new, if u ask me this a good ass deal
Uh alright then I guess I can save em that's kinda weak tho if it's the 20$ part I can jus toss me a perc but if u really gotta wait then I'll jus save em

NOVEMBER 2ND

**ME**
If you or anyone u know takes those percs you have be careful because my boy OD'd last night and we only had smoked 1 and a half but at the hospital they said he had so much fent in his system they thought he took 3 perc 30's and the least like minimum

**R**
Wait wait mine? People been smoking these everyday . What else has he took that day?

**ME**
Nothing, he had a couple sips off his girls beer but that's literally it. I'm jus warnin ya to b a lil careful

**R**
After you came to pick those up? Like early bro?

COMPLAINT/LOPEZ-RODRIGUEZ - 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



r trujillo

After you came to pick those up? Like early
bro?

ME
Shit sucked I was in the hospital till 6 this
morning with him

Literally your the first case I heard. These are
stronger. I agree. I can change how strong
they are. You don't have to buy from me
again. My bad. You did before asked if they
can be stronger if I pressed them. I just
probably gave you a bigger pill

ME
Jus linked with my boy and the hospital
peeps were talkin bout that perc was what
they call a "kill pill" and it's just a pill that
has so much fent in it that 1 hit or 1 line or
whatever and ur instantly dead. My boy said
he took a hit and he exhaled and couldn't
breath in after that and he said he jus woke
up in the hospital. They said he had enough
fent in his system to kill multiple people
Took 2 cans of narcan to bring him back

I know the pill, I been selling these pills
since 2017. On and off. There isn't nothing I

COMPLAINT/LOPEZ-RODRIGUEZ - 17

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



COMPLAINT/LOPEZ-RODRIGUEZ - 18

**H.    Surveillance of 522 North 16th Street on November 14, 2019**

38.    On November 14, 2019, investigators established surveillance around 522 North 16th Street, Mount Vernon, WA. While conducting surveillance around the residence, investigators saw a silver Chevy Silverado pickup truck with Washington license plate C67700P arriving at the residence. The Chevy Silverado was registered to Jiovanni Alejandro NUNEZ at 914 North 16th Street, Mount Vernon, WA. Shortly thereafter, two individuals, who investigators identified as Rosaliana LOPEZ-RODRIGUEZ and Olivia Estes-Chavez, based on their Washington State identification photographs, walked out of the residence, got into the Chevy Silverado, and left. Investigators followed the truck to a Marijuana dispensary in Mount Vernon, Washington, before losing sight of it.

**I.    Surveillance of 522 North 16th Street on November 19, 2019**

39.    On November 19, 2019, investigators again established surveillance around the residence at 522 North 16th Street. While conducting surveillance, investigators saw LOPEZ-RODRIGUEZ appearing from the driveway of the residence and walking a short way down the street towards a white Toyota Camry. A female with blonde hair was sitting inside the Camry.

40.    Investigators saw LOPEZ-RODRIGUEZ getting into the passenger seat of the Camry. The Camry then drove around the block. A short time later, investigators saw LOPEZ-RODRIGUEZ getting out of the vehicle at a different location. After getting out of the vehicle, LOPEZ-RODRIGUEZ walked back toward 522 North 16th Street and then up the driveway of the residence. Because of the position of surveillance, however, investigators were unable to see LOPEZ-RODRIGUEZ entering the residence.

41.    Later the same day, investigators saw a vehicle park along the street in front of 522 North 16th Street. Soon, LOPEZ-RODRIGUEZ emerged, jogged to the end of the driveway, and approached the passenger door. LOPEZ-RODRIGUEZ then made a hand-to-hand exchange of something with the driver. LOPEZ-RODRIGUEZ then jogged back

COMPLAINT/LOPEZ-RODRIGUEZ - 20

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  to the driveway of the residence towards the entrance and out of sight. Investigators saw

2  LOPEZ-RODRIGUEZ with US currency in her hand after the transaction.

3      42.    Investigators followed the Camry to a nearby park, where the driver parked

4  the vehicle. Investigators then made contact with the driver, who was the lone occupant

5  of the vehicle. The driver was identified as someone who had been a target of a narcotics

6  investigation conducted by the Skagit County Inter-local Drug Enforcement Unit, in

7  which the Unit's confidential informant had bought drugs from the individual on three

8  separate occasions.

9      43.    The driver was subsequently arrested by investigators. Inside the vehicle

10  was a pill in plain view. The driver was read the *Miranda* rights, which he/she waived.

11  The driver also gave the investigators consent to search his/her vehicle. Prior to the

12  search, the driver admitted that there was a "Perc 30" pill in the vehicle and a

13  methamphetamine pipe.

14      44.    Investigators located a light-blue pill stamped with the "M 30" marking, a

15  methamphetamine pipe, and a cell phone the driver claimed as belonging to him/her.  The

16  "M 30" pill's appearance was consistent with the pills located at the scene of the Victim's

17  death. The driver provided investigators with the cell phone number for his/her phone.

18  The driver was then transported to the Mount Vernon Police Department for interview.

19      45.    Investigators interviewed the driver at the Mount Vernon Police

20  Department. The driver (hereinafter the "Confidential Source") agreed to cooperate with

21  law enforcement in exchange for consideration regarding the three previous controlled

22  buys and the instant offense.

23      46.    The Confidential Source told investigators that he/she had bought the "M

24  30" pill from a female named "Rosie." When shown a driver license photo of LOPEZ-

25  RODRIGUEZ, the Confidential Source confirmed LOPEZ-RODRIGUEZ as "Rosie."

26  The Confidential Source further told investigators that LOPEZ-RODRIGUEZ lives with

27  her girlfriend "Olivia," but LOPEZ-RODRIGUEZ is the only person dealing "M 30"

28  pills.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

47.     According to the Confidential Source, LOPEZ-RODRIGUEZ received her supply of pills from her uncle daily. LOPEZ-RODRIGUEZ told the Confidential Source that she would pick up 30 to 50 pills from her uncle at a specified time every day—sometimes twice a day.

48.     The Confidential Source consented to a search of his/her cellular phone. Investigators observed a contact under the name "Rosie" with the cell phone number 360-982-9395. The cellphone contained multiple text messages between the Confidential Source and LOPEZ-RODRIGUEZ arranging the deal that investigators believe they saw during surveillance.

49.     The Confidential Source has two drug-related felony convictions from over 15 years ago. The Confidential Source also has three non-drug, non-crime-of-dishonesty gross misdemeanor convictions from the 90s. The Confidential Source has two driving-related simple misdemeanor convictions and one additional non-drug, non-crime-of-dishonesty simple misdemeanor between 1993 and 2011. An NCIC check showed that the Confidential Source also has an active Washington state felony warrant for possession of a controlled substance without a prescription.

**J.     Federal Search and Tracking Warrants for LOPEZ-RODRIGUEZ's Residence and Cellphone**

50.     On November 21, 2019, investigators obtained a federal search warrant for the residence at 522 North 16th Street and a federal tracking warrant for LOPEZ-RODRIGUEZ's cellphone, (360) 982-9395. In addition, on November 22, 2019, investigators obtained a federal court order for a pen register and trap and trace device for the same number.

**K.     First Controlled Buy from LOPEZ-RODRIGUEZ and Observation of the Potential Source of "M 30" Pills**

51.     Also on November 21, 2019, investigators directed the Confidential Source to contact LOPEZ-RODRIGUEZ to arrange the purchase of "M 30" pills. Specifically, investigators directed the Confidential Source to order a large number of "M 30" pills

COMPLAINT/LOPEZ-RODRIGUEZ - 22

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 from LOPEZ-RODRIGUEZ in the hope that this would force LOPEZ-RODRIGUEZ to
2 contact her supplier to replenish her pills.

3       52.     Immediately thereafter, the Confidential Source contacted LOPEZ-
4 RODRIGUEZ and ordered a large number of M30 pills as directed by the investigators.
5 LOPEZ-RODRIGUEZ, in response, told the Confidential Source that she only had a
6 portion of the pills to fill the order and that she would have to receive more pills from her
7 supplier. LOPEZ-RODRIGUEZ did indicate, however, that she would be able to obtain
8 additional pills.

9       53.     Meanwhile, investigators established surveillance around LOPEZ-
10 RODRIGUEZ's residence (522 North 16th Street). The U.S. Customs and Border
11 Protection helicopter assisted with surveillance from the air.

12       54.     After LOPEZ-RODRIGUEZ communicated with the Confidential Source,
13 investigators saw LOPEZ-RODRIGUEZ meeting with two different individuals. First, at
14 approximately 4:48 pm, LOPEZ-RODRIGUEZ came out of the residence, walked down
15 the street, got into the front passenger seat of a Ford Focus bearing Washington state
16 license plate BRH8042, which had arrived there within a few minutes. The vehicle then
17 drove around the block and returned to LOPEZ-RODRIGUEZ's residence. LOPEZ-
18 RODRIGUEZ then got out of the car and returned to her residence.

19       55.     A check with the Washington State Department of Licensing showed that
20 the Ford Focus was registered to an individual named C.D. at a Burlington, Washington.
21 Address. Investigators later drove by the Burlington address and saw the Ford Focus
22 parked at the residence. Based on training and experience, as well as prior surveillance
23 conducted on LOPEZ-RODRIGUEZ in this case, investigators believed that this was a
24 simple drug transaction in which LOPEZ-RODRIGUEZ sold drugs to the driver of the
25 Ford.

26       56.     Then, at approximately 5:00 p.m., investigators saw LOPEZ-RODRIGUEZ
27 and an unknown male in a gray hoodie meeting up at the southeast corner of the
28 intersection at North 16th Street and Fir Street in Mount Vernon, WA. LOPEZ-

COMPLAINT/LOPEZ-RODRIGUEZ - 23

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 RODRIGUEZ and the male proceeded to walk down to a nearby alley in the
2 neighborhood together. While investigators on the ground could not see LOPEZ-
3 RODRIGUEZ and the male as they walked down the alley, the CBP helicopter
4 maintained surveillance on the two individuals, who continued walking together.

5      57.    After LOPEZ-RODRIGUEZ and the male had been walking together for
6 approximately 16 minutes, investigators saw LOPEZ-RODRGUEZ and the male
7 emerging from the alley, returning to North 16th street, and parting their ways.  LOPEZ-
8 RODRIGUEZ walked back to and entered her residence, while the male continued
9 walking down the street. The CBP helicopter continued surveillance of the male and
10 watched the male walking onto the driveway of the residence located at 914 North 16th
11 Street, Mount Vernon, WA and disappearing under trees at the rear of the residence.

12      58.    Soon thereafter, LOPEZ-RODRIGUEZ contacted the Confidential Source
13 and said that she now had enough pills to fill the Confidential Source's earlier order.
14 Based on the circumstances, investigators believed that the male could potentially be
15 LOPEZ-RODRIGUEZ's supplier of "M 30" pills.

16      59.    Investigators continued surveilling LOPEZ-RODRIGUEZ's residence.
17 Sometime later, LOPEZ-RODRIGUEZ came out of the residence, ran down North 16th
18 Street, and approached the passenger side of a Toyota Camry. LOPEZ-RODRIGUEZ
19 then leaned into the vehicle and ran back to her residence. The Camry immediately left
20 the area. A check with the Washington Department of Licensing showed that the Camry
21 was registered to an individual with the same name as the aforementioned citizen
22 informant who had provided information to the Sedro Wooley PD but with a different
23 date of birth.

24      60.    Investigators then directed the Confidential Source to set up a meeting with
25 LOPEZ-RODRIGUEZ at her residence to complete the controlled purchase of "M 30"
26 pills. Prior to the controlled purchase, the Confidential Source met with investigators at a
27 pre-determined meeting location. The Confidential Source and his/her vehicle were
28 searched by investigators for money, drugs, weapons, and other contraband; none was

COMPLAINT/LOPEZ-RODRIGUEZ - 24

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   found. The Confidential Source was then provided an audio recording/transmitting device

2   and pre-recorded U.S. currency to purchase the drugs.

3          61.     Investigators followed the Confidential Source from the meeting location to

4   LOPEZ-RODRIGUEZ's residence. Once the Confidential Source parked his/her car

5   there, LOPEZ-RODRIGUEZ came out of the residence, entered the Confidential

6   Source's vehicle, and sat in the passenger seat. A short time later, investigators saw

7   LOPEZ-RODRIGUEZ getting out of the passenger seat and heading back into the

8   residence. The Confidential Source then left the area and drove back to a pre-determined

9   meeting location with the investigators.

10         62.     At the ensuing meeting with investigators, the Confidential Source handed

11  over the same number of "M 30" pills he/she had arranged to purchase from LOPEZ-

12  RODRIGUEZ. The pills were consistent in appearance with the "M 30" pills that were

13  found in the Victim's bedroom. Law enforcement then searched the Confidential Source

14  and the Confidential Source's vehicle for money, drugs, weapons, and other contraband;

15  none was found. The Confidential Source told investigators that upon arrival at LOPEZ-

16  RODRIGUEZ's residence, LOPEZ-RODRIGUEZ came out of the residence and got into

17  the passenger side of the his/her vehicle. The Confidential Source then gave the buy

18  funds to LOPEZ-RODRIGEUZ and received the number of "M 30" pills he/she had pre-

19  agreed to purchase from LOPEZ-RODRIGUEZ. The Confidential Source further stated

20  that he/she and LOPEZ-RODRIGUEZ discussed the Confidential Source purchasing

21  more pills later. A review of the audio recording device confirmed the Confidential

22  Source's account of the controlled purchase. Investigators subsequently released the

23  Confidential Source for the day.

24         63.     The "M 30" pills purchased from LOPEZ-RODRIGUEZ were later field-

25  tested by the Whatcom County Fire Department using a Rigaku ResQ CQL Scanner, a

26  portable chemical detector. The scan result did not detect the presence of fentanyl or

27  other fentanyl analogues from the pills. However, based on my training and experience, it

28  is not uncommon for these scanners to not pick up small amounts of fentanyl and

COMPLAINT/LOPEZ-RODRIGUEZ - 25

1  fentanyl analogues contained in these pills. The scan result did indicate, however, that

2  mannitol was present while oxycodone was not present. Notably, mannitol was also

3  found in the "M 30" pills recovered from the Victim's bedroom.

4  **L.    Confidential Source's Unauthorized Contact with Estes-Chavez**

5       64.    Investigators continued to surveil LOPEZ-RODRIGUEZ's residence

6  following the controlled buy of the "M 30" pills from LOPEZ-RODRIGUEZ. Later that

7  evening, investigators observed a Toyota Scion sedan bearing Washington license plate

8  BSA4343, registered to LOPEZ-RODRIGUEZ at a different address in Mount Vernon,

9  WA, departing LOPEZ-RODRIGUEZ's residence and driving to the parking lot of

10  Hillcrest Park, located at 1717 South 13th Street, Mount Vernon, Washington. In the

11  passenger seat of the Toyota Scion was Estes-Chavez; investigators could not see who

12  the driver was.

13       65.    Once the Scion was parked in the parking lot, another vehicle, which

14  investigators recognized as belonging to the Confidential Source, pulled up alongside the

15  Scion for a brief period of time. Investigators later confronted the Confidential Source

16  about this meeting. The Confidential Source told investigators that LOPEZ-

17  RODRIGUEZ had contacted him/her asked if he/she needed a pill for him/herself—for

18  the controlled buy, the Confidential Source had represented to LOPEZ-RODRIGUEZ

19  that he/she was buying pills for others. The Confidential Source told LOPEZ-

20  RODRIGUEZ that she/he did. The Confidential Source then met up with LOPEZ-

21  RODRIGUEZ and bought an "M 30" pill, which the Confidential Source subsequently

22  consumed.

23       66.    Later on November 26, 2019, investigators reviewed messages on the

24  Confidential Source's phone. These messages indicated that the Confidential Source

25  again met with LOPEZ-RODRIGUEZ on November 23 and 24, 2019 to buy "M 30" pills

26  without the direction of law enforcement.

27

28

COMPLAINT/LOPEZ-RODRIGUEZ - 26

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**M.      The Second Meeting between LOPEZ-RODRIGUEZ and the Unknown Male Associated with 914 North 16th Street**

67.      Following the brief encounter with the Confidential Source's vehicle, the Scion returned to LOPEZ-RODRIGUEZ's residence. Estes-Chavez came out of the passenger seat of the Scion and walked towards LOPEZ-RODRIGUEZ's residence. The Scion then left the residence and parked several streets to the west of the residence.

68.      Investigators then saw LOPEZ-RODRIGUEZ emerging and walking down North 16th Street, not far away from where the Scion was parked. LOPEZ-RODRIGUEZ then met up with a male, who was also on foot and was wearing a hooded sweatshirt, around 730 North 16th Street. The male's appearance closely resembled that of the male with whom LOPEZ-RODRIGUEZ had an on-foot meeting in the alley earlier in the afternoon. After approximately a one-minute meeting, they separated and the male walked back into the driveway of the residence at 914 North 16th Street. Based on training and experience, investigators suspected that LOPEZ-RODRGIUEZ met with the male to either hand over money she got from selling "M 30" pills, return unsold pills, or both.

69.      Following the meeting between LOPEZ-RODRIGUEZ and the unknown male, investigators terminated surveillance for the day.

**N.      Introduction of an Undercover Officer**

70.      On November 25, 2019, investigators directed the Confidential Source to introduce an undercover officer to LOPEZ-RODRIGUEZ so that the undercover officer can establish a direct line of communication with LOPEZ-RODRIGUEZ. The Confidential Source subsequently messaged LOPEZ-RODRIGUEZ and let her know that the undercover officer was interested in buying pills from her. In response, LOPEZ-RODRIGUEZ that she could "get a hold of [her] cousin" to procure the pills for the undercover officer.

71.      Later the same day, the undercover officer texted LOPEZ-RODRIGUEZ at 360-982-9395. When the undercover officer introduced himself to LOPEZ-

COMPLAINT/LOPEZ-RODRIGUEZ - 27

1   RODRIGUEZ, LOPEZ-RODRIGUEZ texted back and asked: "You interested in the

2   blues[?]" Based on training and experience, investigators understood the "blues" to mean

3   blue "M 30" pills. The undercover officer replied and said: "Good good. I was hoping to

4   get more blues" and offered "[$]1400 for 60 [M 30 pills]." LOPEZ-RODRIGUEZ

5   countered the undercover officer with $1,450 for 50 "M 30" pills. The undercover officer

6   agreed.

7        72.    The undercover officer and LOPEZ-RODRIGUEZ did not meet to do the

8   deal on November 25, 2019 because LOPEZ-RODRIGUEZ told him that she did not

9   have enough pills to fill his order. LOPEZ-RODRIGUEZ messaged the undercover

10  officer and said: "Thought I be albe too tonight [*sic*]. But my uncle is dead asleep. I

11  would have helped you. I can't help you till the morning.  Sorry for the slack." The

12  undercover officer and LOPEZ- RODRIGUEZ then agreed to meet the following day to

13  complete the transaction.

14  **O.    Meeting Between the Undercover Officer and LOPEZ-RODRIGUEZ and**

15  **Identification of Jiovanni Alejandro NUNEZ as a Potential Supplier**

16        73.    The next morning, on November 26, 2019, the undercover officer and

17  LOPEZ-RODRIGUEZ exchanged multiple text messages. During those exchanges,

18  LOPEZ-RODRIGUEZ agreed to sell 100 "M 30" pills for $1,800 to the undercover

19  officer. LOPEZ-RODRIGUEZ told the undercover officer that it "won't be till 2."  The

20  undercover officer understood this to mean that LOPEZ-RODRIGUEZ would not have

21  enough pills to sell to him until 2 p.m.

22        74.    Investigators established surveillance around LOPEZ-RODRIGUEZ's

23  residence at approximately 6 a.m. that morning. Between then and 1:10 p.m.,

24  investigators observed two vehicles visiting the residence: a white Toyota sedan bearing

25  Washington license plate AWN0322, and a Chevrolet Suburban bearing Washington

26  license plate AXD3616. Also during that period, investigators followed LOPEZ-

27  RODRIGUEZ driving to Bellingham, WA in the Scion.

28

COMPLAINT/LOPEZ-RODRIGUEZ - 28

1   75.   At approximately 1:02 p.m., while LOPEZ-RODRIGUEZ was driving back

2   from Bellingham, WA, LOPEZ-RODRIGUEZ sent the undercover officer a text

3   message: "He's on his way." The undercover officer understood this to mean that

4   LOPEZ-RODRIGUEZ's source of supply was on the way to meet LOPEZ-RODRIGUEZ

5   and supply pills.

6   76.   At approximately 1:06 p.m., LOPEZ-RODRIGUEZ returned to her

7   residence. At approximately 1:17 p.m., investigators saw the same silver Chevy Silverado

8   they saw on November 14, registered to Jiovanni Alejandro NUNEZ at 914 North 16th

9   Street, Mount Vernon, WA, arriving in front of LOPEZ-RODRIGUEZ's residence.

10   LOPEZ-RODRIGUEZ then got into the front passenger seat of the Silverado and

11   remained there until approximately 1:41 p.m.

12   77.   At approximately 1:41 p.m., investigators saw LOPEZ-RODRIGUEZ

13   getting out the Chevy Silverado and going back into her residence. Immediately

14   thereafter, the undercover officer received the following text message from LOPEZ-

15   RODRIGUEZ: "You ready to meet[?]"

16   78.   Shortly thereafter, investigators saw LOPEZ-RODRIGUEZ going back to

17   and getting into the passenger side of the Silverado. LOPEZ-RODRIGUEZ and the

18   undercover officer spoke on the phone and arranged to meet in 30 minutes at a mutually

19   agreed location. At approximately 1:51 p.m., investigators observed the Silverado, with a

20   male driver and LOPEZ-RODRIGUEZ still inside the vehicle, driving to 914 North 16th

21   Street. Investigators saw the male driver getting out and walking toward the entrance of

22   914 North 16th Street. A short time later, the male driver came out of the residence and

23   went back into the Silverado.

24   79.   At approximately 2:01 p.m., investigators saw the Silverado departing 914

25   North 16th Street and driving to LOPEZ-RODRIGUEZ's residence. At approximately

26   2:04 p.m., both the male driver and LOPEZ-RODRIGUEZ got out of the Silverado and

27   then got into LOPEZ-RODRIGUEZ's Toyota Scion, which was parked near her

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  residence. The male again drove and LOPEZ-RODRIGUEZ sat in the front passenger

2  seat. The Scion soon pulled away from LOPEZ-RODRIGUEZ's residence.

3        80.    Investigators followed the Scion to a Mobile gas station. The male driver

4  got out of the Scion and walked into the gas station. Investigators then followed the Scion

5  to a nearby Walmart. The male driver and LOPEZ-RODRIGUEZ both got out of the

6  Scion and walked into the Walmart store.

7        81.    At approximately 2:26 p.m., the male driver and LOPEZ-RODRIGUEZ got

8  back into the Scion. The male driver continued to drive the car. Investigators followed the

9  Scion to near the arranged meeting location, where the Scion parked at approximately

10  2:39 p.m. Both individuals remained in the car for a short amount of time.

11        82.    LOPEZ-RODRIGUEZ then got out of the Scion and walked toward the

12  undercover vehicle based on the description of the car the undercover officer had

13  previously provided. LOPEZ-RODRIGUEZ entered the undercover vehicle and talked

14  with the undercover officer for a short amount of time before the undercover officer

15  relocated his vehicle at LOPEZ-RODRIGUEZ's request. During that conversation,

16  LOPEZ-RODRIGUEZ asked the undercover officer to front the money. The undercover

17  officer refused and told LOPEZ-RODRIGUEZ to bring the pills first.

18        83.    Around the same time, investigators saw the male driver moving the Scion

19  to a different location. Investigators then saw LOPEZ-RODRIGUEZ getting out of the

20  undercover vehicle, walking around the parking lot, and appearing to be looking for the

21  male driver and the Scion. LOPEZ-RODRIGUEZ eventually found the Scion and got

22  back into the vehicle, in which she remained for a short amount of time. LOPEZ-

23  RODRIGUEZ then got out of the Scion again, returned to and got into the undercover

24  vehicle. The undercover officer then gave the buy funds to LOPEZ-RODRIGUEZ, who,

25  in exchange, gave him "M 30" pills. LOPEZ-RODRIGUEZ got out of the undercover

26  vehicle and walked back to the Scion.  Investigators followed the Scion as it drove down

27  a dead end road, where it remained briefly before returning to LOPEZ-RODRIGUEZ's

28  residence at approximately 3:02 p.m.

COMPLAINT/LOPEZ-RODRIGUEZ - 30

84.     The male driver and LOPEZ-RODRIGUEZ remained at her residence until approximately 3:08 p.m. Investigators then observed the male driver coming out of the house, getting into the Chevy Silverado, and driving away. Investigators followed the Silverado to 914 North 16th Street. The male driver parked the Silverado directly in front of the residence at 914 North 16th Street.

85.     Soon after, Investigators saw the Silverado again leaving 914 North 16th Street. Investigators followed the Silverado and saw it going to multiple different locations within Mount Vernon, WA. Investigators conducted a traffic stop on the Silverado to identify the driver. The male driver, whom investigators recognized as the same male that accompanied LOPEZ-RODRIGUEZ to her meeting with the undercover officer, was identified as Jiovanni Alejandro NUNEZ through a Washington Department of Licensing query.

86.     The undercover officer later said that during his meeting with LOPEZ-RODRIGUEZ, LOPEZ-RODRIGUEZ showed him some "M 30" pills in her hand and some "M 30" pills in an Aleve bottle. LOPEZ-RODRIGUEZ then handed the undercover officer all the pills in the Aleve bottle. The undercover officer did not count the pills on scene because the pills likely contained fentanyl and were potentially deadly. After returning to the office, the undercover officer realized that LOPEZ-RODRIGUEZ only gave him approximately 25 "M 30" pills, instead of 100 the undercover officer paid for. The pills were consistent in their appearance with the "M 30" pills recovered from the Victim's bedroom.

**P.     Search of LOPEZ-RODRIGUEZ's Residence and NUNEZ's Residence**

87.     On November 27, 2019, investigators also obtained a federal search warrant for the residence at 914 North 16th Street, Mount Vernon, WA. Later the same day, investigators executed the search warrants for both LOPEZ-RODRIGUEZ's residence and the 914 North 16th Street residence.

88.     LOPEZ-RODRIGUEZ, who was present at the 522 North 16th Street residence, was interviewed by the investigators. Investigators read her the *Miranda*

COMPLAINT/LOPEZ-RODRIGUEZ - 31

1 rights, which she waived. She then told the investigators that there were "M 30" pills in

2 her bedroom, that those pills were hers, and that she distributed those "M 30" pills for

3 money knowing that they contained fentanyl. She also identified NUNEZ as her source of

4 supply and NUNEZ's cell phone number as 929-384-0813.

5       89.    LOPEZ-RODRIGUEZ further told investigators that she communicated

6 with NUNEZ via cell phone to pick up supplies of the M 30 pills from NUNEZ. LOPEZ-

7 RODRIGUEZ consented to the search of her cellphones and showed investigators her

8 text message exchanges with 929-384-0813. In those text exchanges, LOPEZ-

9 RODRIGUEZ and NUNEZ were discussing pill prices and quantities.

10       90.    Investigators subsequently searched LOPEZ-RODRIGUEZ's bedroom and

11 found approximately two and a half "M 30" pills that were consistent in appearance with

12 the "M 30" pill they had seized from the Confidential Source.

13       91.    Meanwhile, investigators searching the 914 North 16th Street, Mount

14 Vernon, Washington residence found the same "M 30" pills, the number of which

15 estimated to be between 500 and 1,500, in a safe in one of the bedrooms.[2] Also found in

16 the bedroom were a Washington State driver's license issued on March 2018 and

17 belonging to NUNEZ, and NUNEZ's banking documents. Employment documents

18 related to Andres Nunez, Jiovanni's brother, were located in the bedroom as well.

19       92.    Investigators also found US Currency in the same safe, the serial numbers

20 of some of which matched those of the pre-recorded buy funds that had been used by the

21 undercover officer.

22       93.    NUNEZ was not present at the residence at the time of the search warrant

23 execution and could not be immediately located.

24       94.    While searching the contents of one of LOPEZ-RODRIGUEZ's cellular

25 phones (360-982-9356) pursuant to her consent, investigators saw that 206-465-8691 was

26

27

28 [2] Investigators chose not to count the pills at the location because handling fentanyl pills requires extreme caution due to their dangerousness.

COMPLAINT/LOPEZ-RODRIGUEZ - 32

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   stored under the name of "Jiovanni." Investigators also saw a text message from LOPEZ-

2   RODRIGUEZ to 206-465-8691 on November 14, 2019, which read:  "Ok I need you to

3   call me tho [*sic*]. Lol from snap." Notably, 206-465-8691 was just one of the five

4   contacts stored in LOPEZ-RODRIGUEZ's phone, and the only contact named

5   "Jiovanni."

6        95.    Investigators then observed saved messages on LOPEZ-RODRIGUEZ's

7   SnapChat with another account titled "Jiovanni Nunez." The messages contained

8   discussions regarding drug prices and quantities.

9   //

10   //

11   //

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT/LOPEZ-RODRIGUEZ - 33

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## CONCLUSION

96. Based on the above-described facts, I respectfully submit that there is probable cause to believe that Jiovanni Alejandro NUNEZ committed the offense set forth in this Complaint.


CHRISTOPHER VANDENBOS
DEA, TFO


Dated this **4** day of December, 2019, at Seattle, Washington.


MARY ALICE THEILER
United States Magistrate Judge

COMPLAINT/LOPEZ-RODRIGUEZ - 34